WALTER CIOCHON, Plaintiff, v. PHILLIP BELLINO, Defendant and Third-Party Plaintiff-Appellant (The City of Chicago, Third-Party Defendant-Appellee).

First District (2nd Division)   No. 1—88—0448

Opinion filed June 13, 1989.

Law Offices of Thomas P. McLaughlin, of Chicago (Thomas P. McLaughlin and Gary L. Kennedy, of counsel), for appellant.

Judson H. Miner, Corporation Counsel, of Chicago (Ruth M. Moscovitch and Nina Puglia, Assistant Corporation Counsel, of counsel), for appellee.

JUSTICE EGAN* delivered the opinion of the court:

The plaintiff, Walter Ciochon, sued the defendant, Phillip Bellino, alleging that on September 20, 1983, at approximately 8 p.m., he was struck by the automobile driven by the defendant when the plaintiff was crossing the street near 5700 West Fullerton in Chicago. Bellino brought a third-party action in contribution against the City of Chi-

---

*Justice Egan participated in this opinion prior to his assignment to the sixth division.

cago alleging that the City "was in control and responsible for the maintenance of Fullerton Avenue and the adjacent street lights in the area at the time of the accident." It further alleged that the City was negligent in maintaining the streetlights in the following manner: (1) improperly maintaining the lighting; (2) improperly allowing the darkened condition to remain for an unreasonable length of time; (3) failing to repair or replace the lights which the City knew or should have known were out; and (4) failing to warn of the dangerous condition.

The City's answer denied the allegations of negligence; but the City did not plead that it was immune from liability. Thereafter, the City moved for summary judgment on the ground that section 3—105 of the Local Governmental and Governmental Employees Tort Immunity Act (Ill. Rev. Stat. 1983, ch. 85, par. 3—105) (Tort Immunity Act) granted it immunity from suit for the effects of wind and rain on public streets. The motion asserted that the reason that the City did not replace or repair the lights was that it was not an isolated incident but a disruption of current requiring repair by Commonwealth Edison. The City supported its motion with the deposition of Officer Ronald Opasinski of the Chicago police department and the affidavit of Bernard O'Hallaren, an engineer for the City of Chicago Bureau of Electricity.

Officer Opasinski testified that it was raining hard for at least an hour before the accident and there were numerous reports of lights out throughout the police district for about an hour before the accident. He and his partner were just north of the accident site when they were notified of its occurrence; they arrived at the scene within two minutes. He found the plaintiff pedestrian in the street in the middle of the block. The site was dark because of the nightfall, the pouring rain and the absence of lighting. He had no idea how long the lights had been out at that particular location or why they were not functioning. He observed that the lights were out for several blocks in either direction as well. Officer Opasinski reported that the lights were out to the police radio dispatcher, but he did not know whether the dispatcher notified anyone else. He also wrote in his police report that "the street light at this location [was] burned out," meaning that the lights were out for the entire block. He did not know whether there had been any prior reports about lights being out at the scene.

In his affidavit, the sufficiency of which will be discussed later in this opinion, O'Hallaren stated that the Bureau of Electricity had not received any reports of lights being out in the 5700 block of West Fullerton during a two-year period which included the date of the accident.

The third-party plaintiff moved to strike the motion for summary judgment on several grounds: the O'Hallaren affidavit did not comply with Supreme Court Rule 191 (87 Ill. 2d R. 191); the third-party defendant City could not rely on section 3—105 because it did not raise the statute in the City's pleadings; the City, in its answer, already admitted ownership and control of the streets and the adjacent lights; and Opasinski's report showed that the City, through its agent, Opasinski, had received notice that the streetlights were out and did nothing to remedy the problem. The trial court granted the motion to strike only as to one paragraph of the O'Hallaren affidavit, which stated that Commonwealth Edison, not the City, was responsible for repairing the outage and restoring service. The court then granted the City's motion for summary judgment. Since no report of proceedings is part of the record, we are unable to determine the basis for the court's ruling.

■ In order for the third-party defendant City to be held liable in contribution to the third-party plaintiff, it must be shown that the City is "subject to liability in tort" to the plaintiff. (Ill. Rev. Stat. 1983, ch. 70, par. 302(a).) The City contends that it owed no duty to the plaintiff pedestrian and, therefore, no cause of action in contribution could lie.

■■ The question of whether a duty exists is one of law for the court to decide and may be resolved on summary judgment. (*Barnes v. Washington* (1973), 56 Ill. 2d 22, 305 N.E.2d 535; *Eddings v. Dundee Township Highway Commissioner* (1985), 135 Ill. App. 3d 190, 478 N.E.2d 888.) Summary judgment is appropriate only where the pleadings, depositions, admissions on file and affidavits present no genuine issue of material fact. *Purtill v. Hess* (1986), 111 Ill. 2d 229, 489 N.E.2d 867.

■ The third-party plaintiff asserts that the City owed the pedestrian plaintiff a duty to maintain the streetlights in a functioning condition and to warn if they were not operating properly. Generally, under section 3—102 of the Tort Immunity Act, a local public entity such as the City owes the duty of ordinary care in maintaining its property. (Ill. Rev. Stat. 1983, ch. 85, par. 3—102.) Section 3—105, upon which the City relies, creates an exception and grants immunity where the injury is "caused by the effect on the use of streets *** of weather conditions as such." (Ill. Rev. Stat. 1983, ch. 85, par. 3—105.) However, there is no immunity where the condition was the result of "physical damage to or deterioration of streets" (Ill. Rev. Stat. 1983, ch. 85, par. 3—105), provided that the local public entity has "actual or constructive notice of the existence of such a condition that is not

reasonably safe in sufficient time prior to an injury to have taken measures to remedy or protect against such condition." Ill. Rev. Stat. 1983, ch. 85, par. 3—102(a).

The City first argues that the streetlights being out was the effect of "natural causes beyond the power of the City to prevent or control" (*Lansing v. County of McLean* (1977), 45 Ill. App. 3d 91, 359 N.E.2d 165, *aff'd in part, rev'd in part on other grounds* (1978), 69 Ill. 2d 562, 372 N.E.2d 822), specifically, a severe storm which blacked out the streetlights throughout the area. Even assuming that such an occurrence would constitute an "effect of weather conditions" rather than "physical damage to or deterioration of" the streetlights, the City has not produced adequate evidence to warrant granting summary judgment on this basis. In order to obtain summary judgment the City must show that there is no genuine issue of material fact that the outage was caused by a system-wide blackout caused by weather conditions. The only evidence the City offered in the circuit court was that it had only been raining about an hour, that all the lights on the block and on a few adjacent blocks were out and that no lights had been reported out from June 1, 1982, to June 30, 1984, in the 5700 block of West Fullerton. The City also points to an ordinance which granted to Commonwealth Edison the right to provide electricity in Chicago, and which this court may judicially notice. While these facts may support the inference that there was a blackout, they do not eliminate the contrary inference that the absence of lights was due to "physical damage to or deterioration of" the streetlights themselves. Therefore, summary judgment could not be granted on this basis.

The City also asserts that it cannot be held liable because it did not have actual or constructive notice of the defect in sufficient time to enable it to have corrected it or provided adequate warning of it. *Lansing v. County of McLean* (1978), 69 Ill. 2d 562, 372 N.E.2d 822; *Horton v. City of Ottawa* (1976), 40 Ill. App. 3d 544, 352 N.E.2d 23.

To establish the lack of notice the City relies principally on the O'Hallaren affidavit. The trial court struck paragraph seven for reasons that do not appear of record. Since the third-party plaintiff asserts that the entire affidavit should have been stricken, we will set it out in full:

> "I, BERNARD O'HALLEREN, being duly sworn on oath, do hereby, depose and state as follows:
>
> 1. I am employed as an Engineer (Engineering Tech Five) by the City of Chicago Bureau of Electricity.
>
> 2. I have worked in this position for the last (12) years. My

duties include obtaining records from our files, reviewing them and at times testifying at depositions and trials.

3. At the request of the Corporation Counsel's Office, I obtained records of repair of street lights for the area around the 5700 block of West Fullerton Avenue for the period between June 1, 1982 and June 30, 1984 (attached as Exhibit 1).

4. These records are kept in the ordinary course of business of the Bureau of Electricity.

5. I have knowledge of our filing system and the records were removed at my direction from the proper files.

6. For this two year period, there are no reports of street lights being out in the 5700 block of West Fullerton.

7. In the case of a power outage, the City of Chicago is not responsible for repairing the outage and restoring service; Commonwealth Edison is.

8. If called to testify at trial, I would so testify."

The third-party plaintiff asserts that the affidavit does not meet the requirements of Supreme Court Rule 191. (87 Ill. 2d R. 191.) First, the third-party defendant argued that although it is apparent that O'Hallaren relied on other records, no sworn or certified copies of them were attached. We initially observe that it is unclear from the record, the briefs and the arguments of counsel whether the third-party plaintiff is arguing that there were *no* records attached to the affidavit or that the records were attached but not certified or sworn to. The City asserts that it makes no difference, citing *Beals v. Huffman* (1986), 146 Ill. App. 3d 30, 496 N.E.2d 281, for the proposition that the failure to attach papers on which an affiant relies in making an affidavit is merely a "technical insufficiency" which should be disregarded when an affiant apparently would be a competent witness at trial.

*Beals,* however, cannot be read so expansively. It appears that the records upon which the affiant relied in *Beals* were in fact a part of the record before the trial court, although attached to another affidavit. The cases upon which the *Beals* court relied support a narrow reading of its holding. In *La Monte v. City of Belleville* (1976), 41 Ill. App. 3d 697, 355 N.E.2d 70, and *Wainscott v. Penikoff* (1936), 287 Ill. App. 78, 4 N.E.2d 511, the courts merely held that the supporting documents need not themselves be sworn to or certified since they were incorporated by reference into the sworn affidavit which attested that the facts therein were true.

Therefore, in the present case, if the only objection were that the attached copies were not certified or sworn to, under *Beals,* the de-

fect would not warrant striking the motion as the sworn affidavit incorporates the reports and sufficiently attests to their accuracy. However, if the deficiency is that the copies were not attached at all to the affidavit or otherwise of record, this is not a mere technical violation but rather requires that those portions of the affidavit which refer to or rely upon the reports be stricken. *Standard Oil Co. v. Lachenmyer* (1972), 6 Ill. App. 3d 356, 285 N.E.2d 497.

■ Given the deficient state of the record, we are unable to determine which rule should apply. The record reveals that the initial affidavit attached to the motion for summary judgment does not have the records attached, even though they were referred to as "Exhibit 1." Elsewhere in the record are copies of certain documents which could be the records to which the O'Hallaren affidavit referred; however, they are simply included without explanation. The parties in their briefs and in oral argument were unable to clarify this problem. It is the responsibility of the appellant to make certain that his challenge to the trial court's ruling is coherent. Since the record does not explain the nature of the challenged defect, we must assume that there has been, at most, only a technical violation of Supreme Court Rule 191(a) and the denial of the motion to strike on this basis was correct. *Foutch v. O'Bryant* (1984), 99 Ill. 2d 389, 459 N.E.2d 958.

The third-party plaintiff challenges the affidavit on the ground that the affiant was not competent. In his motion to strike before the trial court, he only repeated the language of Supreme Court Rule 191(a) and asserted that the affiant could not "testify competently" to the matters set forth therein. On appeal, he specifically contends that the affiant is not competent because O'Hallaren was not the keeper of the records and the manner in which he obtained the records was not explained; and that no facts were offered to show how the records were originally gathered, by whom, the manner in which they were kept, the identity of the keeper, and the manner in which they were disseminated.

While we have some doubts that the affidavit meets the requirements of the supreme court rule, it is unnecessary for us to decide the question, since we conclude that acceptance of the affidavit does not, as a matter of law, resolve the issue of notice. The records are identified by O'Hallaren's affidavit only as "records of repairs of street lights for the area around the 5700 block of West Fullerton Avenue for the period between June 1, 1982 and June 30, 1984." Our own examination discloses that some are "Truck Reports" and others are "Defect Reports," or "Street Light Trouble Reports." Insofar as we can determine, they reflect work done by the department of electric-

ity. We note that, significantly, most of the work done as shown on the "Defect Reports" was done without any complaint having been received. Similarly, most of the "Truck Reports" have no entry in the part of the report marked "Special Complaint."

██ █ It is fairly inferable that a substantial part of the work done was to repair defects discovered by City employees themselves. The affidavit merely recites that the records disclose that "there are no reports [to the department of electricity] of street lights being out in the 5700 block of West Fullerton." The absence of any reports to the department of electricity, however, may not be raised to the inescapable inference that there was also an absence of defects which existed for a sufficient period of time to put the City on notice. There is no evidence as to when the lights on the block of 5700 West Fullerton were last operating. There is no evidence of a system-wide power outage, for example, an affidavit from Commonwealth Edison to that effect. The City's claim that the lights went out as the result of that evening's system-wide outage may be an inference which could be drawn from the existing facts, but a contrary inference may also be drawn and the court cannot resolve the issue on a motion for summary judgment. (*Lynge v. Kunstmann* (1981), 94 Ill. App. 3d 689, 418 N.E.2d 1140.) That the third-party plaintiff failed to produce any evidence of burned out light bulbs or prove that the City had notice of the condition does not alter this result. The City is not entitled to summary judgment simply because its opponent has not yet proved his case. Rather, the City must, by well-pleaded facts, clearly establish its right to judgment. (*Komater v. Kenton Court Associates* (1986), 151 Ill. App. 3d 632, 502 N.E.2d 1295.) The City has failed to do so.

Accordingly, for the foregoing reasons, the order granting the third-party defendant's motion for summary judgment is reversed and the cause is remanded for further proceedings.

Reversed and remanded.

HARTMAN and SCARIANO, JJ., concur.