KEVIN BALL *et al.*, Plaintiffs-Appellees, v. THE VILLAGE OF STREAM-WOOD *et al.*, Defendants-Appellants.

First District (3rd Division)   No. 1—95—2905

Opinion filed March 27, 1996.—Rehearing denied May 24, 1996.

Rock, Fusco, Reynolds, Crowe & Garvey, Ltd., of Chicago (Brian L. Crowe, Kevin W. Horan, and Mara S. Georges, of counsel), for appellants.

Michael Kalland, of Law Offices of Josette Skelnik, and Mark Schuster, of Meyers, Schuster & Pitcher, P.C., both of Elgin, for appellees.

JUSTICE GREIMAN delivered the opinion of the court:

Kevin Ball and May Kostelny (plaintiffs) are Village of Streamwood (Streamwood or the Village) residents and homeowners contesting the constitutionality of an exemption to Streamwood's real estate transfer tax (the tax). The tax, as amended, imposes on sellers of real property a $3 fee for every $1,000 of their property's purchase price (a home sold for $300,000 would incur a $900 tax). The challenged exemption relieves sellers who purchase new residences within the Village of Streamwood from payment of the tax.

Plaintiffs filed a complaint challenging the constitutionality of the Village tax ordinance. The Village responded with a motion to dismiss which the trial court granted, without prejudice, only as to count I of plaintiffs' complaint, finding that the ordinance does not violate the right to travel. In an order dated August 21, 1995, the trial court, pursuant to Supreme Court Rule 308 (134 Ill. 2d R. 308), certified four questions for this court to address:

Question No. 1. Whether the constitutional right to travel is violated or impaired by the exemption to the Village's real estate transfer tax;

Question No. 2. Whether the exemption to the real estate transfer tax, which exempts from payment of the tax sellers who purchase residences within the Village, unconstitutionally violates the taxpayers' rights to uniformity, equal protection and due process;

Question No. 3. Whether plaintiffs have standing to challenge the constitutionality of the tax based upon the existence of an exemption where plaintiffs do not qualify for the exemption (by purchasing outside the Village) and where the Village has adopted a severability clause in its transfer tax ordinance;

Question No. 4. Whether the voluntary payment doctrine prevents plaintiffs from challenging the tax and exemption where plaintiffs paid the tax without filing a contemporaneous protest.

In 1988, the Village adopted ordinance number 1988—52, amended in 1993 raising the tax from $1 to $3, imposing a title transfer tax on Village residents. The ordinance provides in pertinent part:

"3—12—2: Tax Imposed: A tax is imposed on the privilege of transferring title to real estate located within the corporate limits of the Village as evidenced by the recordation of a deed by any person and a tax is imposed on the privilege of transferring the beneficial interest in real estate located within the corporate limits of the Village at the rate of three dollars ($3.00) per one thousand dollars ($1,000.00) of value for each transfer. The tax herein levied shall be in addition to any and all other taxes." Village of Streamwood, Ill., Ordinance No. 1988—52 (1988) (amended 1993).

Subsection L of the tax ordinance exempts from payment of the tax "[t]ransactions wherein one of the grantors has continuously resided upon the property for the past one year and has evidence of a contract for sale as a purchaser for a residence within the Village, such contract having closed within nine months of the exempt transaction or to close by contract within three months after the exempt transaction."

Plaintiffs, individually, transferred title to real estate located within the Village to third parties and subsequently purchased residences outside the Village. Plaintiffs were taxed and, subject to various fines for noncompliance, paid the Village's transfer tax. We shall now examine each of the questions certified to this court.

Question No. 1. Whether the right to travel is violated or impaired by the exemption to the transfer tax

Initially, the parties disagree on the appropriate standard of review, the Village arguing that a rational basis standard should apply while plaintiffs urge that we apply a standard of strict scrutiny.

Although the Supreme Court has declared the right of interstate travel a fundamental right requiring strict scrutiny (*Shapiro v. Thompson*, 394 U.S. 618, 22 L. Ed. 2d 600, 89 S. Ct. 1322 (1969)), it has not addressed whether the right of intrastate travel is also fundamental. See *Memorial Hospital v. Maricopa County*, 415 U.S. 250, 39 L. Ed. 2d 306, 94 S. Ct. 1076 (1974).

■ The fundamental right to travel is implicated only when a law actually deters travel, when impeding travel is the primary aim or when it penalizes the exercise of that right. *Attorney General of New York v. Soto-Lopez*, 476 U.S. 898, 90 L. Ed. 2d 899, 106 S. Ct. 2317 (1986). The Supreme Court has found that a statute penalizes or impairs the right of an individual to travel only when vital government benefits and privileges are denied with the exercise of the right. See *Memorial Hospital*, 415 U.S. 250, 39 L. Ed. 2d 306, 94 S. Ct. 1076 (eligibility for free medical care); *Dunn v. Blumstein*, 405 U.S. 330, 31 L. Ed. 2d 274, 92 S. Ct. 995 (1972) (eligibility for the right to vote); *Shapiro*, 394 U.S. 618, 22 L. Ed. 2d 600, 89 S. Ct. 1322 (eligibility for welfare assistance). No such vital government benefit or privilege is here involved.

Because plaintiffs are unable to identify any vital government benefit or privilege which the tax adversely affects, we decline to apply strict scrutiny and review the Village's tax ordinance using a rational basis standard. See *Northern Illinois Home Builders Ass'n v. County of Du Page*, 165 Ill. 2d 25, 649 N.E.2d 384 (1995); *Guerrero v. Ryan*, 272 Ill. App. 3d 945, 651 N.E.2d 586 (1995).

■ Application of the rational basis test results in denial of the constitutional challenge once a reasonable basis for the passage of the contested legislation is articulated. Defendant need only posit plausible reasons for the legislation that are within the legitimate goals of government; nothing else is required to validate the governmental classification and it does not matter whether the reasons advanced actually motivated the legislative action. *Illinois Health Care Ass'n v. Illinois Department of Public Health*, 879 F.2d 286, 289 (7th Cir. 1989). The rational basis test is particularly deferential in the context of classifications made by tax laws, and if a set of facts can be reasonably conceived that would sustain the classification, the tax must be upheld. *Terry v. Metropolitan Pier & Exposition Authority*, 271 Ill. App. 3d 446, 453, 648 N.E.2d 1047 (1995).

The Village asserts as its basis for passage of the ordinance imposing the tax the fact that "the exemption encourages residents to remain in the Village, to interact with the local populous and businesses, and to contribute to the Village's long-term progress."

Similarly, the Village claims, imposition of the exemption "fosters continuity of citizenry and community values." The reasons articulated by the Village are most curious. The ordinance presupposes that the legitimate goals of "continuity of citizenry and community values" are served by exempting a class of homeowner which chooses to remain in the Village, and that: (1) all Village homeowners share the same "communal" values; (2) the exemption, with its relatively minimal financial burden, "encourages" homeowners to purchase inside the Village; (3) all incoming residents will constitute an affront to Streamwood's "community values and citizenry"; and (4) only residents who purchase homes within the Village, as opposed to leasing, entering a nursing home or moving in with friends or family, are capable of fostering "community values and continuity of citizenry."

Despite these suppositions, the Village's bases for the exemption are reasonably related to legitimate goals of government. In *Nordlinger v. Hahn*, 505 U.S. 1, 120 L. Ed. 2d 1, 112 S. Ct. 2326 (1992), a taxpayer brought an action challenging, on equal protection and right-to-travel grounds, exemptions to a California law requiring property reassessment upon a change of ownership. The law exempted from the reassessment requirement those transfers made by persons over the age of 55 and those between parents and their children. In upholding the exemptions, the Supreme Court found that a "[s]tate has a legitimate interest in local neighborhood preservation, continuity, and stability" which was fostered by the exemptions. *Nordlinger*, 505 U.S. at 12, 120 L. Ed. 2d at 13, 112 S. Ct. at 2333.

For purposes of a rational-basis analysis, we fail to see a significant distinction between the exemptions recognized as constitutional in *Nordlinger* and the exemption in the case at bar. Accordingly, we find the exemption does not violate the constitutional right of travel.

Question No. 2. Whether the exemption violates plaintiffs' constitutional rights to uniformity, equal protection, and due process

■ Plaintiffs contend that the ordinance violates the uniformity clause of the Illinois Constitution, which provides that "[i]n any law classifying the subjects or objects of non-property taxes or fees, the classes shall be reasonable and the subjects and objects within each class shall be taxed uniformly." Ill. Const. 1970, art. IX, § 2. The test of uniformity is found in *Searle Pharmaceuticals, Inc. v. Department of Revenue*, 117 Ill. 2d 454, 512 N.E.2d 1240 (1987), where the supreme court held that a tax classification challenged under the uniformity clause must be based on a real and substantial difference between

those taxed and those not taxed and that the classification must bear some "reasonable relationship" to the object of the legislation or to public policy. *Searle*, 117 Ill. 2d at 468.

In the instant action, a difference clearly exists between those taxed (those relocating outside the Village) and those not taxed (those remaining in the Village). Our analysis, therefore, simply revisits the prior determination that the Village is able to articulate a rational basis for structuring its tax in this manner. Accordingly, we find the tax and exemption to be constitutional under the uniformity clause of the Illinois Constitution.

■ The relevant inquiry when addressing plaintiffs' equal protection claim is whether the distinctions drawn by the tax ordinance rationally promote the ordinance's objectives. See *Belle Terre v. Boraas*, 416 U.S. 1, 8, 39 L. Ed. 2d 797, 803, 94 S. Ct. 1536, 1540 (1974). A plaintiff challenging a tax on equal protection grounds bears the burden of negating every reasonable basis which might support the tax. *Searle*, 117 Ill. 2d at 465. Though our analysis is the same under both uniformity and equal protection, plaintiffs' burden is more demanding under the auspices of uniformity and, "[i]f a tax is constitutional under the uniformity clause, it inherently fulfills the requirements of the equal protection clause." *Geja's Cafe v. Metropolitan Pier & Exposition Authority*, 153 Ill. 2d 239, 247, 606 N.E.2d 1212 (1992).

Again, the court's decision in this regard is guided by the prior determination that the Village is able to offer sufficient justification for its tax ordinance, and the result is the same.

Plaintiffs contend, citing *McKesson Corp. v. Division of Alcoholic Beverages & Tobacco*, 496 U.S. 18, 110 L. Ed. 2d 17, 110 S. Ct. 2238 (1990), that because the Village ordinance "provides no method for objection to payment," the ordinance "constitutes a violation of their procedural due process rights." *McKesson* held, in the context of interstate commerce, that a state found to have imposed an impermissibly discriminatory tax retains flexibility in providing a remedy to those harmed by the tax. *McKesson*, 496 U.S. at 39-40, 110 L. Ed. 2d at 37-38, 110 S. Ct. at 2251-52. This holding is of no help to plaintiffs and we note, for the sake of argument, that we do not find the Village's tax ordinance "impermissibly discriminatory."

Question No. 3. Whether plaintiffs have standing to challenge the constitutionality of the tax based upon the existence of an exemption for which they are ineligible and in light of the Village's adoption of a severability clause to its ordinance

■ The Village code contains a general severability clause which

provides that if one section of the code is found unconstitutional or invalid, the remainder of an ordinance will not be affected, and it is presumed that the Village board would have enacted each and every part irrespective of the invalid subpart. Village of Streamwood, Ill., Municipal Code § 1—2—4 (1988). The test for determining whether an invalid portion of a statute is severable so that what is left may stand is enunciated in *Livingston v. Ogilvie*, 43 Ill. 2d 9, 23, 250 N.E.2d 138 (1969), where the court found: "If what remains after the invalid portion is stricken is complete in itself and capable of being executed wholly independently of that which is rejected, the invalid portion does not render the entire section unconstitutional unless it can be said that the General Assembly would not have passed the statute without the invalid portion eliminated."

The tax, assuming *arguendo* that we found the exemption unconstitutional, is capable of being executed independently, simply without the offensive exemption. Thus, the first part of the test is satisfied. Plaintiffs, however, argue that executing the transfer tax without the exemption—taxing all transfers of "Village" property—would defeat the "purpose" behind the tax exemption, and it is doubtful that the Village would have enacted the tax without the accompanying exemption. Though plaintiff is correct that an entire act will be held unconstitutional if the legislature would not have passed it without a provision which is found to be invalid (*People ex rel. Chicago Bar Ass'n v. State Board of Elections*, 136 Ill. 2d 513, 533, 558 N.E.2d 89 (1990)), such is not the case before us. In *Chicago Bar Ass'n*, the supreme court found the provisions of Public Act 86—786, effective September 6, 1989 (amending Ill. Rev. Stat. 1987, ch. 37, par. 72.2), to be unconstitutional. That act subdivided some of the first district appellate and circuit courts into subcircuits, although the Illinois Constitution establishes the appellate districts and does not allow for such division. The court struck down the circuit court subdivision as well because it reasoned that the legislation would not have been enacted without the division of both appellate and circuit courts so that the Illinois statute providing for severability did not apply. *Chicago Bar Ass'n*, 136 Ill. 2d at 538.

We take judicial notice of the fact that several communities within this judicial district have enacted transfer tax legislation either without any exemptions or with a reduced rate for residents remaining within the corporate limits.[1] Thus, while plaintiffs' argument that the exemption is an essential component of the tax

---

[1]Villages imposing a transfer tax without exemption include Buffalo Grove, Skokie, Highland Park (exempting only transactions without

ordinance makes political sense (exempting from payment of the tax potential voters), it simply is not borne out empirically. A reviewing court can take judicial notice of statutes, ordinances and constitutional provisions even though they were not raised below and any argument based thereon was consequently waived. *Faustrum v. Board of Fire & Police Commissioners*, 240 Ill. App. 3d 947, 608 N.E.2d 640 (1993); *Ralls v. Village of Glendale Heights*, 233 Ill. App. 3d 147, 598 N.E.2d 337 (1992); *Village of Glen Ellyn v. Fujinaga*, 190 Ill. App. 3d 584, 546 N.E.2d 816 (1989); *Ciochon v. Bellino*, 184 Ill. App. 3d 993, 540 N.E.2d 840 (1989).

Because we agree with the Village that it might have enacted the tax without the exemption, we would apply the Village's severability clause and uphold the validity of the tax ordinance absent the exemption. This finding does not lead us to conclude, as the Village suggests, that because the exemption is severable from the tax, plaintiffs lack standing to challenge the exemption.

■ The Village argues that plaintiffs lack standing to challenge the exemption because they do not qualify for the exemption and thus are suffering no actionable injury. In order to have standing to raise a constitutional issue, a plaintiff must bring himself within the class of persons to whom the law is objectionable. See, *e.g., Illinois Municipal League v. Illinois State Labor Relations Board*, 140 Ill. App. 3d 592, 599, 488 N.E.2d 1040 (1986). Because plaintiffs have purchased homes outside the Village, and thus do not fall under the exemption, they are required to pay the transfer tax even if they were to succeed in convincing the trial court to declare the exemption unconstitutional. Thus, the Village contends, plaintiffs have not suffered an injury that is substantially likely to be prevented or redressed by the grant of the requested relief. See *Greer v. Illinois Housing Development Authority*, 122 Ill. 2d 462, 524 N.E.2d 561 (1988).

The above argument fails for two reasons. First, contrary to the Village's contention, plaintiffs' challenge is not to the exemption exclusive of the transfer tax but, rather, to the ordinance establishing both. Also, as this court observed in *Terra-Nova Investments v. Rosewell*, 235 Ill. App. 3d 330, 337, 601 N.E.2d 1109 (1992):

---

consideration), Lincolnshire, Naperville, Park Ridge, Rolling Meadows, Morton Grove, Schaumburg, and Wilmette.

Villages that exempt two-thirds of the tax for residents remaining in the village include Elk Grove and Mount Prospect.

Villages that allow an exemption for residents who purchase a subsequent residence within the village include Elmhurst, Des Plaines, Wheaton, and Hoffman Estates.

"In *McKenzie*, the plaintiff as a taxpaying property owner was held to have standing to challenge a statutory property tax exemption. The court reasoned that the plaintiff had alleged a sufficient stake or interest in the controversy by bringing himself within the ambit of a specific constitutional guarantee (Ill. Const. 1970, art. IX, § 6) regarding property taxes and by claiming that his tax liability is generally affected by a statute which facially violates that guarantee. (*McKenzie*, 98 Ill. 2d at 93.)"

Similarly, in the instant action, plaintiffs have paid money pursuant to a tax which they allege to be "facially violative" of uniformity, due process and equal protection, and thus have standing under *Terra-Nova* and *McKenzie v. Johnson*, 98 Ill. 2d 87, 98 N.E.2d 673 (1983). Were we to accept the Village's argument, only those residents who qualify for the exemption would be capable of challenging it. Can any rational person expect the beneficiaries of the exemption to seek a declaration of its invalidity?

Question No. 4. Whether the voluntary payment doctrine prevents plaintiffs from challenging the tax/exemption where they paid the disputed tax without filing a protest

■ The voluntary payment doctrine provides that a payor may not recover fees voluntarily paid, even if the fees assessed or imposed were illegal, unless (1) the payor lacked knowledge of the facts upon which to protest the fees or taxes at the time payment was made, or (2) the payment was made under duress. *Geary v. Dominick's Finer Foods, Inc.*, 129 Ill. 2d 389, 393, 544 N.E.2d 344 (1989). In *Terra-Nova*, this court found duress to exist where plaintiffs were confronted with the choice of payment or " 'refusal to effect the requested sale, execution or redemption.' " *Terra-Nova*, 235 Ill. App. 3d at 337, quoting *De-Bruyn v. Elrod*, 84 Ill. 2d 128, 136, 418 N.E.2d 413 (1981).

■ In the instant action, duress excused plaintiff's "voluntary" payment of the transfer tax because plaintiffs' residences were subject to contracts to sell to third parties and the Village code provided civil penalties and fines for failure to pay the tax. This qualifies as sufficient duress under *Terra-Nova*, and, therefore, plaintiffs have standing to challenge the tax since their payment of the tax was certainly less than voluntary.

In summation, our findings as to the certified questions before us are as follows: (1) the Village is able to present a "rational relationship" between the ordinance and legitimate governmental goals so as to survive plaintiffs' constitutional challenges based on right to travel, uniformity, equal protection and due process; (2) the exemption is severable from the remainder of the tax ordinance; (3)

plaintiffs have standing to raise constitutional challenge to the ordinance; and (4) the voluntary payment doctrine does not operate to bar plaintiffs' claims.

Affirmed and remanded.

RIZZI, P.J., and TULLY, J., concur.