Tison & Hall Concrete Products Co., Inc., Plaintiff-Appellee, v. A. E. Asher, Inc., and Charles Barfield, Defendants, A. E. Asher, Inc., Defendant-Appellant.

Gen. No. 67–2.

Fifth District.

August 4, 1967.

William E. Aulgur, of Eldorado, and Richard Weinberger, of Chicago, for appellant.

George B. Lee and Charles H. Thompson, of Harrisburg (Arlie O. Boswell, Sr., of counsel), for appellee.

MORAN, P. J.

This is an appeal by the A. E. Asher Co., hereinafter called Asher, from a judgment of the Circuit Court of Saline County, Illinois, in favor of the plaintiff in an action by a subcontractor's supplier of materials to enforce a lien on public funds due a general contractor.

Asher, a Chicago based general contractor, entered into a contract with the Illinois Department of Public Works and Buildings to construct a prison in Johnson County. On May 23, 1963, Asher and Charles Barfield, a mason contractor in Massac County, entered into a subcontract for the masonry work. Pertinent parts of the subcontract provide in part:

> f.   (Rider) All materials shall be charged to General Contractor, all receiving tickets shall be signed signed (sic) by Subcontractor and General Contractor, *the amounts of the materials shall be paid directly to the supplier and Subcontractor by General Contractor, and these amounts shall be deducted from the Subcontractors (sic) amount.* (Emphasis supplied.)

> 6.   *Contract Price.* For the satisfactory performance of Subcontractor's obligations under this subcontract, Contractor agrees to pay Subcontractor the sum of (242,000) dollars. The said contract price is FIRM for the duration of the project and is not subject to escalation for sales tax or any reason whatsoever.

Barfield then entered into an agreement with the plaintiff, a supplier located in Saline County, under which the plaintiff furnished part of the material needed for the masonry work on the prison.

In all, the plaintiff furnished $29,712.77 of building material, issuing all of its bills, shipping tickets, and

statements to Barfield. It did not bill Asher for any of the material furnished. Payments, made by checks of Asher, amounted to $11,167.15, leaving a balance of $18,545.62 due plaintiff.

After giving notice to the State of Illinois, the plaintiff filed a complaint, which was later amended, against both Barfield and Asher, seeking an accounting of the amount due the plaintiff and a decree that there be "a lien upon all money, bonds, and warrants due or to become due to the defendants or either of them which are now their possession of or under control of the Department of Public Works and Buildings," under Ill Rev Stats c 82, § 23. The complaint alleged that Asher had entered into a contract with the plaintiff by which

> the plaintiff agreed to sell and deliver to the said defendant (Asher), building materials and concrete products, as the said A. E. Asher, Inc. might from time to time order through its subcontractor and agent, Charles H. Barfield, Sr., defendant herein, for the erection of the said Minimum Security Prison, at the usual and customary price for such material at the time and place the material was delivered, which contract was made in the City of Harrisburg in the County of Saline and State of Illinois;

that, in accordance with the terms of the contract, the plaintiff furnished to Asher, through Barfield, building materials and concrete products for the construction of the prison; and that certain sums remain unpaid. In an answer to an interrogatory by Asher, the plaintiff stated that an oral contract was entered into in July, 1964, at the plaintiff's place of business.

After a nonjury trial, the judge ordered that the plaintiff "have and recover from defendants, A. E. Asher, Inc., and Charles H. Barfield, Sr., the sum of ($18,545.62)" and decreed that the plaintiff shall have a lien for such an

36

amount "Upon the money, bonds or warrants due from the State of Illinois . . . to the contractor defendant, A. E. Asher, Inc.," having found (1) that Asher and Barfield had entered into a contract which provided that Asher would pay for all materials directly to the supplier and (2) that Asher "promised to pay the plaintiff for said materials so furnished by the plaintiff in the construction of the facility." Only the defendant Asher appeals from this order.

■ The defendant first contends that the trial court erroneously denied its motion to dismiss or transfer the case for lack of venue, which was supported by an affidavit signed by A. E. Asher that no part of the transaction out of which the cause of action supposedly arose took place in Saline County. However, the plaintiff's verified complaint stated that a contract was made between it and Asher, "which contract was made in Harrisburg in the County of Saline and State of Illinois." Since no evidence had yet been heard at the time the court ruled upon the motion and since the court had before it only the plaintiff's verified complaint and the defendant's verified motion, the court would have no way of knowing the truth of the allegations at that time and, therefore, did not err in overruling the defendant's motion at that stage of the proceedings.

The defendant next contends that the court erred in granting a money judgment, arguing that no such relief was requested in the plaintiff's complaint. The trial court ordered that the plaintiff "have and recover" from both defendants the sum due to it for material supplied. We construe this to constitute a money judgment, even though the plaintiff states in its brief that "plaintiff did not ask for a money judgment, nor did it get one."

■■ It is well established in Illinois that a judgment must conform to and be supported by the pleadings and proofs of the case. Sharkey v. Sisson, 310 Ill 98, 141

NE 427; Kohler v. Kohler, 326 Ill App 105, 61 NE2d 687; Seaburg v. Williams, 23 Ill App2d 25, 161 NE2d 576. In this case, there was no prayer for a money judgment, and the court erred in granting such a judgment.

The defendant next contends that the court erred in decreeing that the plaintiff shall have a lien for the full sum of $18,545.62, arguing that the amount of any lien should have been limited to the amount of the indebtedness of Asher to Barfield. Incidental to this contention, the defendant argues that the court erred in refusing to hear evidence concerning the status of the Asher-Barfield account.

Before our discussion of this argument, however, it is necessary to consider the trial court's finding that Asher "promised to pay the plaintiff for said materials so furnished by the plaintiff in the construction of the facility." For, if there were a separate promise by Asher to the plaintiff, as pleaded in plaintiff's complaint, then the amount of the lien would be determined by that promise, since the materials would have been supplied to Asher. We believe that the court's finding is contrary to the weight of the evidence. The plaintiff issued all of its bills, shipping tickets, and statements to Barfield, not to Asher. Payments were made by checks of Asher, consistent with paragraph 4 of the rider to the Asher-Barfield Contract. The plaintiff, however, issued lien waivers for these payments to Barfield, not to Asher. Delmas Tison, owner and general manager of the plaintiff corporation, testified that he had made a contract with Barfield for material to be used in the construction project, which contract was admitted into evidence.

The only evidence which might tend to support the existence of a separate promise from Asher to the plaintiff was elicited in the testimony of Mr. Tison and Everett McConnell, the Office Manager of the plaintiff corporation, (1) that there were telephone conversations between representatives of the plaintiff with someone from Asher

38

Co., thought to be a Mr. Katz, to the effect that Asher would pay for material used on the job and (2) that, whenever Asher became late in making payments to the plaintiff, a representative of the plaintiff would call to determine why the checks were not arriving and that, shortly thereafter, payment would arrive.

■ This testimony, however, is entirely consistent with paragraph 4 of the rider to the Asher-Barfield contract, providing that "the amounts of the materials shall be paid directly to the supplier and Subcontractor by General Contractor." From a review of all the testimony, we believe that the finding of the trial court that Asher had promised to pay the plaintiff for materials used in the construction project is contrary to the manifest weight of the evidence.

This brings us to a consideration of the defendant's contention that the amount of any lien should have been limited to the amount of the indebtedness of Asher to Barfield. Paragraph 4 of the rider to the Asher-Barfield contract provides that the amounts which Asher pays directly to a supplier "shall be deducted from the Subcontractor's amount." Paragraph G of the contract also provides that the contract price of $242,000 is "FIRM for the duration of the project and is not subject to escalation for sales tax or any reason whatsoever." These provisions indicate that Asher had contracted to pay Barfield the total amount of $242,000 for Barfield's completion of the masonry work and that any amount which Asher paid to a supplier to Barfield, such as the plaintiff, would be deducted from the amount due Barfield. This arrangement implies that Asher would only be required to pay the bills of a supplier if the total amount incurred on behalf of the subcontractor was less than the contract price.

It was error, therefore, for the trial court to refuse to allow testimony concerning the Asher-Barfield account. This evidence is clearly relevant in determining the extent of a lien, if any, which should be decreed.

This type of limitation on the extent of a supplier's lien was discussed in a very well-reasoned opinion in Koenig v. McCarthy Const. Co., Inc., 344 Ill App 93, 100 NE2d 338, wherein the court concluded at 104 that:

> It is our judgment, therefore, that inasmuch as sec 23 of the Lien Act has been construed by our Supreme Court in the Gunther case (369 Ill 362) to limit the liens of those furnishing materials to a contractor for a public improvement, to the amount earned and due to the contractor prior to his default, and since this section expressly provides that the term "contractor" includes any "subcontractor" it is both reasonable and proper to conclude that persons, in the position of plaintiffs, furnishing materials to a subcontractor, have no greater rights than persons furnishing materials to a contractor, and both are limited, in the assertion of liens, to the amount due their immediate contractors at the time notice of their liens is given. Any other construction would not only impose an absolute liability upon the original contractor not contemplated by the statute, but be contrary to established principles of law with reference to liens accruing under private contracts.

The court also emphasized, at 101, that "the determination of the existence and extent of a lien depends not only upon the precise wording of the particular Lien Act . . . , but also upon the specific terms of a contract before the court."

Thus, since both the Asher-Barfield contract and section 23 of the Lien Act imply a limitation on the extent of any lien which may be decreed, that part of the trial court's order which provides that the plaintiff shall have a lien in the full amount of $18,545.62 must be reversed and remanded, with the direction that evidence should be received to determine the status of the Asher-Barfield account.

For the foregoing reasons, that part of the judgment appealed from which grants a money judgment is reversed, and that part of the judgment which decrees a lien is reversed and remanded for proceedings not inconsistent with this opinion.

Reversed in part and reversed and remanded in part.

EBERSPACHER and GOLDENHERSH, JJ., concur.