P B M STONE, INC., *et al.*, Plaintiffs-Appellees, v. THOMAS PALZER, as Director of Building and Zoning, *et al.*, Defendants-Appellants.

Third District   No. 3—93—0081

Opinion filed October 12, 1993.

Michael W. Condon, of Hervas, Sotos & Condon, of Itasca (Michael D. Bersani, of counsel), for appellants.

Blanke, Norden, Barmann, Kramer & Bohlen, P.C., of Kankakee (Christopher W. Bohlen, of counsel), for appellees.

JUSTICE BRESLIN delivered the opinion of the court:

The plaintiffs, P B M Stone, Inc., and Bob Neiner Farms, Inc., filed a four-count complaint against the defendants, Thomas Palzer and the County of Kankakee (County), alleging that defendant Palzer, as the director of building and zoning for the County of Kankakee, wrongfully failed to issue the plaintiffs a permit and license in connection with the plaintiffs' proposed gravel quarry operation. Specifically, count I requested a writ of *mandamus* to compel Palzer to issue the permit and license. Count II sought an injunction restraining the defendants from interfering with the plaintiffs' property. Count III sought a writ of *mandamus* to compel the defendants to initiate condemnation proceedings. Count IV alleged that the defendants violated section 1983 of the Civil Rights Act (42 U.S.C. §1983 (1992)) in denying the plaintiffs their substantive and procedural due process rights. The trial court dismissed count III, but entered judgment on behalf of the plaintiffs for $795,000 and ordered that the defendants grant the

plaintiffs the permit and license. The court did not specify the count on which it was awarding damages. We reverse the portion of the court's order which awarded damages. We further find that the court erred in failing to dismiss the plaintiffs' due process claims brought under section 1983. Regarding the *mandamus* count, we find that the ordinance is unlawfully vague and that the trial court properly ordered Palzer to issue the permit.

The plaintiffs are two Illinois corporations owned by Pat Neiner. Both businesses are located in Kankakee County, Illinois, on 500 acres of land in an agricultural zoning district. In the fall of 1988, Neiner informed Palzer that he wanted to operate a quarry on the property and asked him if he needed any permits. According to Neiner, Palzer responded that no permits were necessary and that he simply had to obtain the necessary State permits.

In August 1989, after making substantial investments in equipment for commencement of the quarrying operation, the plaintiffs began blasting on the property. Shortly thereafter, Palzer notified Neiner that he had to stop blasting until he obtained a permit.

The Kankakee County zoning ordinance provided that quarrying is a permitted use in an agricultural district. Permitted uses, according to the ordinance, "shall be permitted in the districts indicated under the conditions specified." The two specified conditions relevant to this case relate to ground vibrations and decibel limits from blasting. With respect to ground vibrations, the ordinance provided that the limits "shall be in accordance with requirements of a permit issued under the performance standards for fire and explosion hazards." (Kankakee County, Ill., Ordinance §V(G)(3)(c)(3) (1967).) Regarding decibel limits, the ordinance states that decibel limits "shall be in accordance with the requirements of the license issued by the director of building and zoning after petition and hearings before the zoning board of appeals." Kankakee County, Ill., Ordinance §V(G)(3)(b)(3) (1967).

In October of 1989, Neiner submitted applications for a ground vibration permit and a decibel limit license. Prior to the commencement of the hearings on the plaintiffs' applications, Palzer's staff recommended that the guidelines set forth by the United States Bureau of Mines and Minerals and the Illinois Department of Mines and Minerals be used as a basis for issuing the permit and license. Hearings on the license and permit applications before the zoning board of appeals began in January 1990, and concluded in March 1990. On February 13, 1990, the County passed a 90-day moratorium on the issuance of blasting licenses and permits.

At the hearings before the board, Spencer W. Lucole, a registered professional engineer, testified that he reviewed the data from a test blast that was conducted on the property. Lucole stated that the data met the criteria recommended by the United States Bureau of Mines and Minerals for safe levels of blasting. Lucole further testified that the blasting would not affect surrounding residential structures, cosmetically or structurally. Lucole opined that any building located within 800 feet of the test blast could not have been damaged.

Two surrounding neighbors of the blast site testified about damage to their properties as a result of the blast. One claimed that her septic tank was damaged and another claimed that his basement windows were cracked.

During the course of the hearing, Neiner revealed that his blasting would take place 15 feet from Rock Creek. Thereafter, testimony was presented about the effects of blasting near the creek. A representative of the Northern Illinois Anglers Association testified that the creek was a high quality stream with various species of fish. He expressed his concern about water leaching from the creek into the quarry hole as a result of blasting. In response to these concerns, Lucole testified that studies done in other parts of the country showed a surprisingly low fish-kill zone to the blast origin. Lucole admitted that leaching was possible as a result of blasting 15 feet from the creek but that he was not an expert in the area of hydrology so, therefore, he could not respond to the issue.

The zoning board subsequently requested that the plaintiffs submit additional evidence in the form of an environmental impact study to determine how blasting would affect the aquatic life and water levels of the creek. The plaintiffs responded that they had already presented all that was required of them by the zoning ordinance, including a permit from the Illinois Environmental Protection Agency, which, according to the plaintiffs, already addressed the environmental issue in the form of a condition on the permit. In an April 1990 letter, the plaintiffs requested that Palzer issue the permit and license. Palzer responded that he could not issue the permit and license because of the 90-day moratorium. Thereafter, the plaintiffs filed their four-count complaint in the circuit court of Kankakee County.

At trial on the plaintiffs' complaint, defendant Palzer testified that he never did deny the permit and license application but that he would deny the permit for ground transmitted vibrations because the applicant did not supply sufficient information to guarantee public safety because of the proximity to the creek. The plaintiffs presented the testimony of various prospective buyers of the stone that would

be quarried from the plaintiffs' property. They testified that they would have been willing to pay somewhere between $3.80 and $5.50 per ton for the stone. Neiner testified that he could probably sell between 150,000 to 500,000 tons of stone from his quarry in a given year and that it would cost him between $0.50 and $0.65 a ton to produce the stone.

After hearing all of the above evidence, the trial court entered judgment for the plaintiffs for $795,000 and ordered Palzer to issue the permit and license. In so ruling, the trial court found that the testimony of Palzer and the various adjoining landowners was not credible. The court noted that there was no evidence in the record to suggest that public safety was endangered as Palzer had stated in his rationale for denial. The court finally concluded that Palzer's decision was arbitrary and irrational because Palzer admitted that there were no criteria for the permit and license and that the plaintiffs stated that they could comply with the guidelines suggested by Palzer's staff and the Federal mining laws. The court ordered Palzer to issue the permit and license and awarded the plaintiffs $795,000 in damages. The court stayed the damage award pending appeal, but refused to stay the order to issue the permit.

On appeal, the defendants first argue that the trial court erred in failing to dismiss the plaintiffs' due process claims. The defendants contend that the plaintiffs failed to allege the deprivation of a property right protected under the fourteenth amendment. The defendants further argue that even if the plaintiffs possessed a constitutionally protected property right, they nonetheless did not state a valid cause of action for procedural or substantive due process.

Initially, we note that the trial court did not indicate which count of the complaint it was awarding damages on, even though count IV was the only count under which they were requested in the complaint. Nonetheless, we will assume *arguendo* that the court would have awarded damages based on any of the three counts which were not dismissed.

■ Turning to the merits, we agree that the trial court should have dismissed the plaintiffs' due process claims. A procedural due process claim must fail when the State provides an unsuccessful applicant for a zoning permit with a sufficient State remedy to cure a random and unauthorized denial. (*New Burnham Prairie Homes, Inc. v. Village of Burnham* (7th Cir. 1990), 910 F.2d 1474.) A *mandamus* action has been specifically held to be such an adequate State law remedy so as to preclude a procedural due process claim. (See *New Burnham Prairie Homes, Inc. v. Village of Burnham* (7th Cir. 1990),

910 F.2d 1474.) In our case, the plaintiffs clearly had an adequate State law remedy in their *mandamus* action. Accordingly, they are precluded from raising a procedural due process claim.

■ Turning to the substantive due process claim, we note that to state a valid substantive due process claim, a plaintiff must allege that the decision was arbitrary and irrational and must show either a separate constitutional violation or the inadequacy of State law remedies. (*Polenz v. Parrott* (7th Cir. 1989), 883 F.2d 551.) Here, the plaintiffs failed to allege that the decision was arbitrary and irrational. They also failed to allege a separate constitutional violation, and as we have previously noted, they failed to show that they did not have an adequate State law remedy.

The plaintiffs contend that their procedural due process claim should serve as the "separate constitutional claim" required for the substantive due process claim. This is incorrect. As the Seventh Circuit Court of Appeals has noted:

"In cases where the plaintiff complains that he has been unreasonably deprived of a state-created property interest, without alleging a violation of some other *substantive* constitutional right *or that the available state remedies are inadequate*, the plaintiff has not stated a substantive due process claim." (Emphasis added.) *New Burnham Prairie Homes, Inc. v. Village of Burnham* (7th Cir. 1990), 910 F.2d 1474, 1481.

The defendants next argue that the trial court erred in granting the writ of *mandamus* and ordering Palzer to issue the permit and license. They contend that Palzer never issued a final decision, so at most the trial court should have merely ordered him to make a decision. The defendants further argue that the zoning ordinance should be interpreted to allow the zoning board to request further information, *i.e.*, the environmental impact statement, and that the plaintiffs' failure to submit it should be grounds for denying the permit.

■ We find that the defendants erroneously rely on the ordinance provisions relating to Palzer's discretion. Those provisions relating to Palzer's discretion on whether to grant the permit and license are unconstitutionally vague and thus unenforceable. An ordinance is unconstitutionally vague when a person of common intelligence must necessarily guess at its meaning. (*Broadrick v. Oklahoma* (1973), 413 U.S. 601, 37 L. Ed. 2d 830, 93 S. Ct. 2908.) In other words, the ordinary person must be capable of appreciating, from the language of the ordinance, how he will be affected by its operation. (*Smith v. Town of Normal* (1992), 238 Ill. App. 3d 944, 605 N.E.2d 727.) Furthermore, when an ordinance vests discretionary power in an administrative of-

ficer, definite terms and intelligible standards must be provided to guide the exercise of discretion. (*Krol v. County of Will* (1968), 38 Ill. 2d 587, 233 N.E.2d 417; *Balmoral Racing Club, Inc. v. Illinois Racing Board* (1992), 151 Ill. 2d 367, 603 N.E.2d 489; *Union National Bank & Trust Co. v. Village of New Lenox* (1987), 152 Ill. App. 3d 919, 505 N.E.2d 1.) Failure to provide such standards renders the ordinance void as an unlawful delegation of legislative power. *Krol v. County of Will* (1968), 38 Ill. 2d 587, 233 N.E.2d 417.

■ Here, the ordinance provided that the plaintiffs' proposed quarry operation was a permitted use within the agricultural district. The ordinance further provided that the plaintiffs had to obtain a permit and license. Specifically, the ordinance required that the decibel limits shall be in accordance with a license issued by Palzer after petition and hearing before the zoning board. We note that the decision of whether to grant the license was solely vested in Palzer. Any decision rendered by the board or standard set by the same was not binding on Palzer. Regarding ground vibrations, the ordinance provided only that the limits be in accordance with a permit issued under performance standards for fire and explosion hazards. However, that ordinance does not specify what those standards are or how they might be determined. In sum, the decision of whether to grant the permit and license was within the sole discretion of Palzer and the ordinance did not include any guidelines, criteria, rules, or regulations to guide the officer's discretion. Accordingly, we find that the ordinance unlawfully delegates legislative power to the director of building and zoning, and therefore, the trial court properly granted the writ of *mandamus* to compel the defendants to issue the permit and license.

Last, the defendants argue that the trial court's damages award should be reversed. The defendants point out that the plaintiffs did not ask for money damages in their prayer for relief in the *mandamus* count.

It has been held that where there is no prayer for a money judgment in a plaintiff's complaint, it is improper to grant such relief. (*Tison & Hall Concrete Products Co. v. A.E. Asher, Inc.* (1967), 86 Ill. App. 2d 34, 229 N.E.2d 137.) Section 2—604 of the Code of Civil Procedure provides, in relevant part, that every complaint shall contain a specific prayer for relief. (735 ILCS 5/2—604 (West 1992).) That section further provides that a prayer for relief does not limit the relief obtainable, but where other relief is sought the court shall, by proper orders, and upon terms that may be just, protect the adverse party against prejudice by reason of surprise. 735 ILCS 5/2—604 (West 1992).

■ Here, we have already determined that the trial court should have dismissed the plaintiffs' due process claims. Thus, the only other count on which the trial court could have properly awarded damages was the *mandamus* count. The *mandamus* count of the plaintiffs' complaint prayed only that the court command Palzer to issue the license and permit and that the court grant such further relief as it may deem reasonable and necessary. Such language has been narrowly construed and does not indicate a request for damages. (See *Paskas v. Illini Federal Savings & Loan Association* (1982), 109 Ill. App. 3d 24, 440 N.E.2d 194.) In this particular case, the defendants were prejudiced by the lack of a prayer for damages in the *mandamus* count, because, had damages been in issue, they could have raised the affirmative defense provided by sections 2—104 and 2—206 of the Local Governmental and Governmental Employees Tort Immunity Act (745 ILCS 10/2—104, 2—206 (West 1992)). Those sections provide that both local public entities and public employees are immune from liability regarding the issuance, denial, suspension, or revocation of any license or permit. (*U-Haul Co. of Chicago Metroplex v. Town of Cicero* (1980), 87 Ill. App. 3d 915, 410 N.E.2d 286.) Under the circumstances, we find that the trial court erred in awarding the plaintiffs damages under the *mandamus* count because damages were not requested and the defendants were prejudiced thereby. Accordingly, we vacate the damage award.

For the foregoing reasons, we affirm the decision of circuit court of Kankakee County to compel the defendants to issue the permit and license. We reverse the portion of the court's judgment awarding the plaintiffs damages. We further reverse the court's decision denying the defendants' motion to dismiss the due process claims. The remaining issues are moot.

Affirmed in part; reversed in part.

LYTTON and STOUDER, JJ., concur.