MORAN TRANSPORTATION CORPORATION, Plaintiff-Appellant, v. JOHN H. STROGER, JR., President of the Cook County Board of Commissioners, *et al.*, Defendants-Appellees and Cross-Appellants (Dolphin Cartage, Inc., *et al.*, Plaintiffs-Appellants and Cross-Appellees; The County of Cook *et al.*, Defendants-Appellees and Cross-Appellants).

First District (6th Division)   No. 1—97—2061

Opinion filed March 5, 1999.

Abramson & Fox (William D. Brejcha, of counsel), and Madler & Peldyak (Paul Peldyak, of counsel), both of Chicago, for appellants.

Richard A. Devine, State's Attorney, of Chicago (Patricia A. Shymanski, Thomas M. Burnham, and Sanjay T. Tailor, Assistant State's Attorneys, of counsel), for appellees.

JUSTICE QUINN delivered the opinion of the court:

This appeal involves a challenge to the constitutionality of the Cook County Retail Sale of Gasoline and Diesel Fuel Tax Ordinance (the Ordinance), enacted as an amendment to the Gasoline Tax Ordinance. Cook County Ordinance § 97—0—3 (eff. January 1, 1997). Plaintiffs Moran Transportation Corporation, the Illinois Trucking Association, Dolphin Cartage, Inc., the Chicago Regional Trucking Association and Donald Griffin, individually and as representatives of a class of persons similarly situated, brought this action in the circuit court of Cook County seeking declaratory and injunctive relief. Defendants John Stroger, president of the Board of Commissioners of Cook County, and various members of the Cook County Board of Commissioners filed a motion to dismiss plaintiffs' complaints for declaratory and injunctive relief pursuant to sections 2—615 and 2—619 of the Illinois Code of Civil Procedure (735 ILCS 5/2—615, 2—619 (West 1996)). The circuit court dismissed plaintiffs' complaints. On appeal, plaintiffs contend that: (1) the trial court erred in finding that plaintiffs lacked standing to attack the constitutionality of the Ordinance; (2) the trial court erred in finding that certain trial testimony clearly established the constitutionality of the Ordinance; (3) the trial court erred in giving consideration to inadmissible hearsay testimony; (4) the specific terms and provisions of the Illinois Motor Fuel Tax Law (35 ILCS 505/1 *et seq.* (West 1996)) establish that the Ordinance's undefined exemptions render it unconstitutionally vague; (5) the Ordinance's railroad locomotive fuel exemption renders it unconstitutionally vague; (6) the trial court wrongly rejected plaintiffs' uniformity clause claim; (7) the trial court wrongly rejected plaintiffs' special legislation and equal protection attack upon the Ordinance; and (8) the jet fuel provisions of the Illinois Motor Fuel Tax Law and plaintiffs' offer of proof concerning jet fuel combine to establish that the Ordinance is unconstitutionally vague.

For the reasons that follow, we affirm the dismissal of plaintiffs' complaints.

In 1976, Cook County enacted the Gasoline Tax Ordinance, which imposed a tax of six cents per gallon on the retail sale of gasoline. Diesel fuel sales were not subject to taxation under the ordinance. In November and December 1996, the Cook County Retail Sale of Gasoline and Diesel Fuel Tax Ordinance was enacted by the Cook County Board of Commissioners, amending the Gasoline Tax Ordinance to include a tax of six cents per gallon on the retail sale of diesel fuel in Cook County effective January 1, 1997. Cook County did not issue regulations to assist in the construction of the Ordinance. The Ordinance provides, in relevant part:

"Section 1:

\* \* \*

(b) 'Diesel fuel' means any petroleum product intended for use or offered for sale as a fuel for engines in which the fuel is injected into the combustion chamber and ignited by pressure without electric spark. This definition does not include home heating oil or railroad locomotive fuel.

(c) 'Distributor or Supplier' means a person who either produces, refines, blends, compounds, or manufactures gasoline or diesel fuel in this County or transports or has transported gasoline or diesel fuel into this County or receives gasoline or diesel fuel in Cook County on which this tax has not been paid.

(d) 'Retail Dealer' means any person who engages in the business of selling gasoline or diesel fuel in this County of Cook to a purchaser for use or consumption and not for resale in any form.

Section 2. Tax Imposed.

(a) A tax is hereby imposed on the retail sale in Cook County of gasoline and of diesel fuel at the rate of six (6) cents per gallon or fraction thereof. Such tax is to be paid by the purchaser and nothing in this Ordinance shall be construed to impose a tax upon the occupation of distributors, suppliers or retail dealers." Cook County Ordinance § 97—0—3 (eff. January 1, 1997).

The Ordinance imposing the diesel fuel tax was one of three revenue-enhancement measures enacted to fill a projected fiscal operating deficit of $123 million in the Cook County budget. The projected revenue from the diesel fuel tax, estimated at $11 million in 1997, was to be directed into the Cook County public safety fund. The Cook County public safety fund funds operations of the Cook County sheriff's police department, the Cook County State's Attorney office, the Cook County Department of Corrections, the clerk of the circuit court of Cook County and the office of the chief judge of the circuit court of Cook County. The Cook County public safety fund does not fund highway maintenance.

On December 20, 1996, the Chicago Regional Trucking Associa-

tion (CRTA), Dolphin Cartage, Inc. (Dolphin), and Donald Griffin (Griffin) filed a class action lawsuit against Cook County and various Cook County Board commissioners, seeking to enjoin the assessment and collection of the diesel fuel tax. CRTA is a motor carrier association whose members operate diesel-fueled motor vehicles and purchase and consume diesel fuel in Cook County. Dolphin operates diesel fuel motor vehicles and purchases and consumes diesel fuel in Cook County. Griffin purchases diesel fuel in Cook County on a regular basis for a privately owned Mercedes Benz that he uses for his personal transportation with the consent of the vehicle owner.

On December 23, 1996, the Illinois Transportation Association, Inc. (ITA), and Moran Transportation Company (MTC) also filed a class action lawsuit, seeking to enjoin the diesel fuel tax. ITA, primarily comprised of trucking companies, is an educational and legislative association dedicated to ensuring that its members comply with government regulations and conducting lobbying efforts on behalf of the trucking industry. MTC is a motor carrier company. Both suits were consolidated before the tax and miscellaneous remedies section of the circuit court of Cook County. In their respective complaints for a temporary restraining order and preliminary and permanent injunctive relief, plaintiffs alleged that although the Ordinance included an exemption for railroad locomotive fuel, there was no such exemption for trucking companies or for individuals who buy diesel fuel for their personal transportation. Plaintiffs further alleged that by failing to apply the diesel fuel tax "across the board" and favoring select groups by exempting them from the tax, the Cook County Board created an unconstitutional ordinance. Plaintiffs also alleged that unless the trial court enjoined the Ordinance, plaintiffs and the class would suffer irreparable harm.

On December 31, 1996, after a hearing on plaintiffs' motions for a temporary restraining order against enforcement of the tax, the trial court allowed defendants to collect the diesel fuel tax but ordered them not to use the tax proceeds.

On January 2, 1997, plaintiffs filed a joint motion to certify the lawsuit as a class action. The motion alleged that plaintiffs brought the action as a class action to represent the interests of all motor carriers affected by the diesel fuel tax.

On January 7, 1997, defendants filed a motion to dismiss, asserting that certain defendants were not proper parties, that ITA and CRTA lacked standing and that plaintiff ITA's complaint was factually and legally insufficient on all counts.

On January 15, 1997, the trial court granted defendants' motion to dismiss. The court also dismissed plaintiffs ITA and CRTA for lack

of standing, finding that, as associations, ITA and CRTA did not purchase diesel fuel themselves and could not bring a lawsuit on behalf of their membership. Plaintiffs' special legislation, equal protection, due process, uniformity and commerce clause counts were dismissed as facially and legally insufficient. The court further granted nonassociation plaintiffs MTC and Dolphin leave to file new amended complaints. Defendants were further restrained from using any proceeds of the diesel fuel tax, which were to be held in escrow through January 29, 1997.

MTC filed its third amended complaint on January 21, 1997. Dolphin and Griffin filed their second amended complaint on January 22, 1997. Both complaints alleged that the Ordinance violated the uniformity, equal protection, special legislation and due process clauses of the Illinois Constitution (Ill. Const. 1970, art. IX, § 2; art. I, § 2; art. IV, § 13; art. I, § 2) (counts I, II, III and IV). Dolphin and Griffin also included a *mandamus* claim, seeking an order requiring the defendants to collect the diesel fuel tax on all sales of jet fuel in Cook County (count V). Defendants moved to dismiss all counts of both complaints as factually and legally insufficient. On February 13, 1997, the trial court denied defendants' motion to dismiss counts I through IV of MTC's complaint. The trial court further denied defendants' motion to dismiss counts I through IV of Dolphin and Griffin's complaint, but granted defendants' motion to dismiss count V of Dolphin and Griffin's complaint.

On February 18, 1997, defendants filed a motion to reconsider, arguing that the trial court erred when it denied their motion to dismiss. On March 4, 1997, the trial court denied defendants' motion to reconsider that part of the February 13, 1997, order denying their motion to dismiss plaintiffs' due process vagueness challenge.

On March 10, 1997, the trial court held an evidentiary hearing on plaintiffs' motions for preliminary injunctions. Michael Moran, president of MTC, testified that his company used diesel fuel to power its fleet of trucks and that it usually purchased fuel in Elk Grove Village in Cook County. On a monthly basis, MTC uses a minimum of 25,000 gallons of diesel fuel in the local area. Moran testified that he was familiar with the diesel fuel tax ordinance. Moran examined the railroad locomotive fuel exemption in the Ordinance and testified that railroad locomotive fuel was, to his knowledge, diesel fuel. Moran further testified that a railroad locomotive could run on the same fuel used to power trucks.

Moran next testified that upon the acquisition of fuel, he is assessed a diesel fuel tax. Moran stated that he did not understand why his company was paying the Cook County diesel fuel tax when he

could use diesel fuel in his home or his office or even to fuel an airplane, but the only time he has to pay a tax is when he uses it to fuel his trucks. When asked to define home heating oil, Moran stated that it was diesel fuel that is used to heat a home or office building.

Moran further testified that his company was severely affected by the 30% increase in the price of diesel fuel over the course of a year. In Moran's opinion, the price increase was due to a shortage of the product. Moran indicated that the tax threatens his company's profit margin and could result in the loss of approximately 70 employees working in Cook County. MTC's net income before taxes for the month of November 1996 was a negative $11,816. MTC's profit for the month of December 1996 before taxes was $184.

Ferdinand Serpe, executive director of ITA, testified that, in his opinion, the long-haul carrier business is not impacted by Cook County's six cent diesel fuel tax because trucking companies have the ability to buy fuel elsewhere. Serpe stated that, "[i]f they are traveling east, they have the ability to buy in Indiana and pay greatly cheaper rates. And if they are traveling west, they have the ability to buy it in Missouri or Iowa and, once again, pay far less fuel prices than they do here in Illinois." However, Serpe further testified that the diesel fuel tax places Cook County carriers at a competitive disadvantage because "the extra taxes cannot be passed on to the shipper in the form of a surcharge or the form of any other additional charge."

When questioned about the difference in home heating oil, Serpe testified that home heating oil is a high sulfur fuel which is dyed red. Trucks are prohibited under the Clean Air Act (42 U.S.C. § 7545 (1994)) from using fuel that is dyed red.

Edward Barnicle, president and owner of Dolphin, testified that his company is a motor carrier in Illinois and surrounding states. Barnicle testified that the company purchases most of its fuel from a company located in Will County. Dolphin is only charged the diesel fuel tax when the fuel is delivered to the company at a location that is within Cook County. Barnicle decided to purchase fuel in Indiana because it is approximately 30 cents per gallon less there and would save the company approximately $6,000 per year. Barnicle did not calculate the effect of the Cook County diesel fuel tax on the company's income.

Dolphin experienced a net loss of approximately $38,000 in 1996 due to an inability to pass along the rapid increases in the price of diesel fuel. Barnicle testified that he did not foresee any layoffs in 1997 due to the impact of the diesel fuel tax.

When questioned about the definition of diesel fuel cited in the Ordinance, Barnicle testified that the definition of diesel fuel seemed

vague because it could also include jet fuel or home heating oil. Barnicle also testified that Dolphin would not use high sulfur fuel to power its trucks, nor would it use fuel that was dyed red to power its trucks because trucking companies are prohibited under the Clean Air Act from doing so. Barnicle testified that he understood that the fuel was dyed red to differentiate between high sulfur diesel fuel and low sulfur diesel fuel.

George Sweeney, owner of Sweeney Oil Company (SOC), testified that SOC is a motor fuel and lubricant distributor to commercial, industrial and residential concerns. Eighty-five percent of SOC sales were commercial while fifteen percent were residential. SOC delivers the same heating oil to commercial buildings as it delivers to homes. Sweeney testified that he could not tell from the Ordinance whether a sale of home heating oil to a commercial building was exempt from the diesel fuel tax. Sweeney stated that he did not charge the tax on residential home heating oil and that he was confused about when the tax applied. Sweeney also testified that due to the new diesel fuel tax, SOC's 1997 diesel fuel sales were down from 1996 levels.

Sweeney then testified that railroad locomotives use high sulfur diesel fuel. Sweeney confirmed that the Ordinance did not define railroad locomotive fuel and testified that railroads could also use low sulfur fuel to power their locomotives.

After reviewing the Ordinance, Sweeney indicated that there were no express exemptions in the Ordinance for diesel fuel purchased for marine use, boat use, jet fuel use, construction equipment or use as cleaning fluid. The Cook County Department of Revenue informed Sweeney that diesel fuel used for stand-by generators was taxable. Sweeney stated that fuel used to clean machinery was not exempt home heating oil and was not injected into any engine. Sweeney also testified that he would charge the Cook County diesel fuel tax on diesel fuel sold for use in off-road vehicles.

Donald Griffin of Chicago testified that he drives a third party's 1984 Mercedes Benz, which is diesel-fueled, about 45 weeks a year for his personal transportation. Griffin testified that he was confused regarding whether the purchaser or the consumer of the diesel fuel was responsible for paying the tax.

J.M. Naughton, executive director of CRTA, testified that his members voted to sue Cook County to enjoin the diesel fuel tax in December 1996. Naughton stated that CRTA had lost members due to adverse economic conditions and that two Cook County fuel suppliers were closing their businesses because sales volume had dropped significantly with the new tax. Naughton examined the Ordinance and noted that the exemptions for home heating oil and railroad locomo-

tive fuel were not defined. Naughton also testified that boats were powered by the same diesel fuel that was exempt when used to power a railroad locomotive.

Following witness testimony, plaintiffs argued that the Ordinance was vague and that defendants were required to collect the tax on jet fuel because it was covered by the diesel fuel definition in the Ordinance. Plaintiffs then made an offer of proof of the evidence deposition of Michael Cosmen. Cosmen, the owner of a flight school, testified that, in his opinion, jet fuel satisfied the definition of diesel fuel under the Ordinance and, therefore, was subject to the tax. The trial court reviewed the transcript of Cosmen's testimony, concluded that jet fuel was not diesel fuel and rejected plaintiffs' offer of proof.

On March 21, 1997, the trial court denied in part and granted in part plaintiffs' motions for preliminary injunction. In finding the Ordinance unconstitutionally vague, the court stated that the home heating oil exemption was never defined and was shown to be a generic, confusing term that left the public in doubt concerning when to apply the tax. The court focused on Mr. Sweeney's testimony that home heating oil is a high sulfur diesel fuel manufactured in various grades that can be used to heat homes, apartment buildings, and commercial buildings. The circuit court further noted that red-dyed diesel fuel cannot be used by trucks without violating the law. However, the court also found that if boaters, truckers or commercial users went to SOC to buy home heating oil, Sweeney could not tell if the fuel was tax exempt or whether it was taxable because it was not being used to heat a residence. The trial court then concluded as follows:

> "The Court finds that the Plaintiff the trucking industry has established that this Ordinance passed by the County of Cook is unconstitutional based on the vagueness of the statute. Therefore, the Court is granting a permanent injunction against the enforcement of this provision based on the vagueness problem here."

The court rejected plaintiffs' due process, equal protection, uniformity and special legislation claims.

Defendants then filed a motion to sever the home heating oil exemption from the Ordinance and also filed a motion to reconsider the merits of the March 21, 1997, decision. Defendants argued in their motion to reconsider that the court wrongly relied on hypothetical circumstances in finding the Ordinance unconstitutional. In support of their motion, defendants submitted the deposition testimony of Sweeney. This deposition testimony was not submitted as evidence at the hearing.

On April 23, 1997, the trial court granted defendants' motion to reconsider, finding that none of the plaintiffs had standing to chal-

lenge the constitutionality of the Ordinance because their challenge was based on hypothetical situations; namely, whether boats or off-road vehicles were entitled to the home heating oil exemption. While the trial court acknowledged that home heating oil had a commonly accepted meaning, it expressly found that the evidence presented was insufficient to establish this claim, stating that the testimony given by Sweeney did not convince the court that home heating oil had a commonly accepted meaning. Plaintiffs asked the court why Sweeney's deposition testimony was considered in its ruling when the deposition testimony was not submitted as evidence at the hearing. The court responded that defendants submitted Sweeney's deposition testimony with their motion to reconsider. Plaintiffs argued that because the deposition was not in evidence and the court's decision appeared to partly rely on the deposition in its ruling, the court should reconsider its decision. The court stated the following:

> "[T]he Court agrees if it was not for the deposition, I would not have anything in Mr. Sweeney's testimony that would tell me for sure how the industry interpreted home heating oil, but I will stand on this motion that I have decided today and that will be based on there was no standing for that hypothetical."

Following the ruling on defendants' motion to reconsider, plaintiffs asked the court for class certification. Defendants objected to class certification and the trial court did not rule on plaintiffs' request. Later, it appears that plaintiffs renewed their request in chambers and outside the presence of a court reporter. After hearing more argument in chambers, the court granted class certification. The only record of the in-chambers hearing is the verified statement of recollection of defense counsel, Sanjay Tailor, who averred that, during the in-chambers proceedings, he objected to class certification on various grounds. Tailor averred that he argued that plaintiffs' motion for class certification did not address the statutory requirements for class certification, there was no briefing on the issue and defendants were never given an opportunity to respond. Tailor further argued that because judgment was entered in favor of defendants on the merits and because a finding that an ordinance is unconstitutional renders the ordinance unconstitutional as to all persons, not simply the named plaintiffs, class certification was unnecessary.

The trial court's order of April 21, 1997, regarding class certification specifically states:

> "That this action is certified as a class action and Plaintiffs Moran Transportation Corp. and Dolphin Cartage, Inc. are appointed as class representatives for truckers and motor carriers, private and for-hire, who purchase diesel fuel in Cook County, IL for the operation of their trucks ***."

On May 13, 1997, on plaintiffs' motion for reconsideration, the circuit court found that plaintiffs lacked standing and cited *Illinois Municipal League v. Illinois State Labor Relations Board*, 140 Ill. App. 3d 592, 488 N.E.2d 1040 (1986), for the general rule that "one who would attack a statute as unconstitutional must bring himself within the class as to whom the law is allegedly constitutionally objectionable." The court then noted that it would "consider the validity of a statutory provision only at the instance of one who is affected by it" and found that plaintiffs failed to meet their burden on the issue of vagueness regarding the home heating oil exemption.

The court further found that the cases relied upon by plaintiffs, *McKenzie v. Johnson*, 98 Ill. 2d 87, 456 N.E.2d 73 (1983), and *Ball v. Village of Streamwood*, 281 Ill. App. 3d 679, 665 N.E.2d 311 (1996), did not apply to a challenge based on vagueness and that plaintiffs were afforded the standing to make their challenges. The court then reaffirmed its decision on April 23, 1997, on the basis that plaintiffs did not meet their burden by showing they had standing to challenge the constitutionality of the home heating oil exemption.

The court also acknowledged that the deposition of Mr. Sweeney was inadmissible as evidence upon which to base a decision. The court specifically stated in its order that it reviewed the testimony of Sweeney given at the hearing only. Plaintiffs' timely appeal followed.

Plaintiffs first contend that the trial court erred in finding that plaintiffs lacked standing to attack the constitutionality of the Ordinance because they did not show that they purchased home heating oil and were taxed. Defendants respond that plaintiffs were permitted to assert their constitutional challenge to the Ordinance, but only to the extent they presented an actual controversy.

■ In order to be granted an injunction, a plaintiff must have standing in the cause, which requires a showing of a clearly ascertainable right or interest that needs protection. *Hough v. Weber*, 202 Ill. App. 3d 674, 685, 560 N.E.2d 5 (1990). The doctrine of standing "makes it necessary for a party seeking such relief to allege an injury in fact to some substantive interest he possesses which is recognized by statute or common law." *Village of Lake in the Hills v. Laidlaw Waste Systems, Inc.*, 143 Ill. App. 3d 285, 292, 492 N.E.2d 969 (1986).

The doctrine of standing is designed to insure that the courts are accessible to resolve "actual controversies" between parties and not address abstract questions, moot issues or cases brought on behalf of others who may not desire judicial aid. *Jenner v. Wissore*, 164 Ill. App. 3d 259, 267, 517 N.E.2d 1220 (1988). "Actual" does not mean that a wrong must have been committed and injury inflicted. "Actual" does require a showing that the underlying facts and issues of the case are

not moot or premature; there must be a concrete dispute that admits of an immediate and definitive determination of the parties' rights. *Illinois Municipal League*, 140 Ill. App. 3d at 606. Thus, courts do not rule on the constitutionality of a statute where the complaining party is only theoretically affected by the alleged invalidity of the provision. *Illinois Municipal League*, 140 Ill. App. 3d at 599. Similarly, courts will decide constitutional questions only to the extent required by the issues in the case. *Illinois Municipal League*, 140 Ill. App. 3d at 599; *Harris-Intertype Corp. v. Donley Bindery Co.*, 26 Ill. App. 3d 140, 144-45, 324 N.E.2d 668 (1975).

Plaintiffs assert that the trial court erred in its reliance on *Illinois Municipal League*. In *Illinois Municipal League*, the plaintiff, an unincorporated, nonprofit, nonpolitical association of Illinois cities, villages and incorporated towns, sought declaratory and injunctive relief and challenged the constitutionality of the Illinois Public Labor Relations Act (Pub. Act 83—1012, eff. July 1, 1984). The trial court found that the plaintiff lacked standing to bring the complaint. *Illinois Municipal League*, 140 Ill. App. 3d at 596. This court held that the possibility of a future actual controversy was too remote to support standing to bring suit. *Illinois Municipal League*, 140 Ill. App. 3d at 605. Furthermore, this court held that the League itself was not subject to the Act and so could not be harmed by its enforcement. *Illinois Municipal League*, 140 Ill. App. 3d at 605.

Plaintiffs maintain that *Illinois Municipal League* involved an association seeking relief for its members from a statute that was allegedly unconstitutional. In this case, plaintiffs argue, they are not associations, but entities that actually paid the diesel fuel tax and therefore have standing to attack the tax and the exemptions as unconstitutional. To support their contention, plaintiffs rely on *Ball v. Village of Streamwood*, 281 Ill. App. 3d 679, 665 N.E.2d 311 (1996). In *Ball*, plaintiffs filed a complaint challenging the constitutionality of the Village of Streamwood's real estate transfer tax ordinance. The ordinance, as amended, imposed on sellers of real property a $3 fee for every $1,000 of their property's purchase price. The ordinance contained an exemption for sellers who purchased new residences within the Village of Streamwood from payment of the tax. The trial court granted defendant's motion to dismiss. On appeal, *inter alia*, the trial court certified the following question: "[w]hether plaintiffs have standing to challenge the constitutionality of the tax based upon the existence of an exemption" for which they are ineligible and in light of the village's adoption of a severability clause to its ordinance. *Ball*, 281 Ill. App. 3d at 682. The village argued that the plaintiffs lacked standing to challenge the exemption because they did not qualify for

the exemption and therefore suffered no actionable injury. This court held that the village's argument failed because the plaintiffs did not challenge the exemption exclusive of the transfer tax, but also challenged the ordinance establishing both. *Ball*, 281 Ill. App. 3d at 687. The plaintiffs paid money pursuant to a tax which they alleged to be unconstitutional and therefore had standing. *Ball*, 281 Ill. App. 3d at 688.

■ Defendants attempt to distinguish *Ball* by generally noting that the case presented an actual controversy to the court. We disagree with defendants' distinction. In the instant case, plaintiffs' challenge is not solely to the home heating oil exemption and the railroad locomotive fuel exemption exclusive of the diesel fuel tax but, rather, to the Ordinance establishing both. Defendants maintain that plaintiffs failed to present an actual controversy because their complaints contained hypothetical situations regarding the exemptions in the Ordinance. While we agree that plaintiffs' complaints contained such hypotheticals, it is undisputed that plaintiffs have paid money pursuant to the tax which they allege to be violative of the uniformity, due process and equal protection clauses of the Illinois Constitution. As the court stated in *Ball*, "[w]ere we to accept the Village's argument, only those residents who qualify for the exemption would be capable of challenging it. Can any rational person expect the beneficiaries of the exemption to seek a declaration of its invalidity?" *Ball*, 281 Ill. App. 3d at 688. Therefore, we hold that plaintiffs have standing to assert a constitutional attack on the Ordinance and reverse the trial court's decision in this respect.

We next address plaintiffs' contentions regarding the trial and deposition testimony of George Sweeney. Plaintiffs first argue that the trial court's finding that Sweeney's trial testimony showed he was not confused as to how to apply the tax was against the manifest weight of the evidence. Plaintiffs rely heavily on the fact that the trial court initially found Sweeney's testimony that he did not know when to apply the tax to be a sufficient ground to find the Ordinance confusing and unconstitutionally vague. Defendants respond that the trial court found Sweeney's testimony irrelevant because no plaintiff alleged that he purchased home heating oil for use in an apartment building or commercial building, thus the court was not presented with an actual controversy.

Plaintiffs assert that the trial court's initial finding that the home heating oil exemption was unconstitutionally vague was solely premised on the trial testimony of Sweeney, who testified that he could not determine from the Ordinance whether the exemption applied to sales of home heating oil for any purpose or only sales of

home heating oil used to heat residences. Plaintiffs argue that, based on this testimony, the court found that home heating oil was a generic term and therefore unconstitutionally vague. However, On April 23, 1997, in granting the defendants' motion for reconsideration, the court stated the following:

"The Court acknowledges that the deposition of Mr. Sweeney was inadmissible as evidence upon which to base a decision. The Court has reviewed the testimony of Mr. Sweeney given at the hearing only. From his testimony, it is clear that he determines when the exemption applies based on the use of the fuel. He exempts residential purchases of fuel. This includes use in an apartment building. He did not consider an office building a home or residence."

■ Plaintiffs argue that the trial court committed prejudicial error when it considered Sweeney's deposition testimony as trial evidence. A court of review will not disturb the findings of a trial judge sitting without a jury if there is any evidence in the record to support those findings. *Matlow v. Rosenfeld*, 245 Ill. App. 3d 448, 458, 614 N.E.2d 520 (1993). Although the trial court initially considered Sweeney's deposition testimony in its ruling, the order on May 13, 1997, clearly states that it reviewed the testimony of Sweeney given at the hearing only. As courts are presumed to have considered only competent evidence and the admission of incompetent evidence is considered harmless in a bench trial, no prejudice resulted to plaintiffs. *In re Application of the Cook County Collector for Judgment & Sale Against Lands & Lots Returned Delinquent for Nonpayment of General Taxes and/or Assessments for the Year 1985 & Prior Years*, 219 Ill. App. 3d 396, 406, 579 N.E.2d 936 (1995).

Plaintiffs next argue that the Ordinance is unconstitutionally vague because one cannot tell from the Ordinance when to apply the home heating oil and railroad locomotive fuel exemptions. Plaintiffs specifically assert that the Ordinance contains no specific definition of home heating oil and merely exempts home heating oil without any guidance as to the application of the tax predicated on any of the many possible uses of home heating oil.

■ The construction of an ordinance is a question of law, which is subject to *de novo* review. *Village of Schaumburg v. Jeep Eagle Sales Corp.*, 285 Ill. App. 3d 481, 676 N.E.2d 200 (1996). An ordinance is unconstitutionally vague when a person of common intelligence must necessarily guess at its meaning. *PBM Stone, Inc. v. Palzer*, 251 Ill. App. 3d 390, 395, 622 N.E.2d 71 (1993). "In other words, the ordinary person must be capable of appreciating, from the language of the ordinance, how he will be affected by its operation." *PBM Stone*, 251

Ill. App. 3d at 395. The absence of statutory definitions of a few terms does not render a statute void for vagueness. *Kavanagh v. County of Will*, 293 Ill. App. 3d 880, 884, 689 N.E.2d 299 (1997). Language does not possess mathematical precision, and courts will give undefined terms their plain and ordinary meaning. *People v. Anderson*, 148 Ill. 2d 15, 28, 591 N.E.2d 461 (1992). Whether a statute is void for vagueness depends upon the specific facts of each case. *People v. Kershner*, 291 Ill. App. 3d 1024, 1027, 684 N.E.2d 1049 (1997).

■ In the instant case, the exemptions do not render the Ordinance unconstitutionally vague. The Ordinance does not involve constitutionally protected rights and is reasonably clear in its application to plaintiffs. Furthermore, the exemptions for home heating oil and railroad locomotive fuel are unambiguous and self-explanatory based on their commonly accepted meanings. Moran, Serpe and Sweeney each testified as to the common definition of home heating oil. In each case, the witness stated that it was oil used to heat a residence or a home. Moreover, home heating oil is dyed red and contains a high sulfur content. Moran, Serpe and Sweeney each testified that they understood that red-dyed diesel fuel designated a high sulfur content and that trucks are prohibited from using high sulfur diesel fuel. Since we find the Ordinance to be constitutional on this basis, we will not address plaintiffs' remaining vagueness arguments because we find them to be without merit.

■ We next address plaintiffs' contention that the Ordinance is unconstitutional under article IX, section 2, of the Illinois Constitution, *i.e.*, the uniformity clause (Ill. Const. 1970, art. IX, § 2). We note that the scope of a court's inquiry when a tax has been challenged on uniformity grounds is relatively narrow. Statutes are presumed constitutional and broad latitude is afforded to legislative classifications for taxing purposes. *Geja's Cafe v. Metropolitan Pier & Exposition Authority*, 153 Ill. 2d 239, 248, 606 N.E.2d 1212 (1992).

The uniformity clause provides the following:

"In any law classifying the subjects or objects of nonproperty taxes or fees, the classes shall be reasonable and the subjects and objects within each class shall be taxed uniformly. Exemptions, deductions, credits, refunds and other allowances shall be reasonable." Ill. Const. 1970, art. IX, § 2.

"To survive scrutiny under the uniformity clause, a nonproperty tax classification must be based on a real and substantial difference between the people taxed and those not taxed, and the classification must bear some reasonable relationship to the object of the legislation or to public policy." *Allegro Services, Ltd. v. Metropolitan Pier & Exposition Authority*, 172 Ill. 2d 243, 250, 665 N.E.2d 1246 (1996). A

plaintiff challenging a tax classification has the burden of showing that it is arbitrary or unreasonable. *Terry v. Metropolitan Pier & Exposition Authority*, 271 Ill. App. 3d 446, 453, 648 N.E.2d 1047 (1995). The burden is fulfilled if the plaintiff comes forward with a good-faith uniformity challenge. *Terry*, 271 Ill. App. 3d at 453. However, a tax classification must be upheld if any statement of facts can be conceived that would reasonably sustain the classification. *Geja's Café*, 153 Ill. 2d at 248.

■ Applying the above principles to the case at bar, plaintiffs argue that the Ordinance violates the uniformity clause because the diesel fuel tax creates a classification that is not based upon a real and substantial difference between those parties taxed and those not taxed. Plaintiffs specifically maintain that defendants' argument in the court below that the purported exemption of railroads was justified because railroads do not use county roadways but trucks do is unreasonable. Plaintiffs further assert that the Ordinance is unconstitutional because boats and off-road vehicles do not use county roadways, but are subject to the tax.

In support of their argument, plaintiffs rely on *Milwaukee Safeguard Insurance Co. v. Selcke*, 179 Ill. 2d 94, 688 N.E.2d 68 (1997). In *Milwaukee*, plaintiffs, as insurance companies doing business in Illinois but incorporated in other states, were required under section 409 of the Illinois Insurance Code (215 ILCS 5/409 (West 1992)), to pay a 2% privilege tax. Domestic corporations were exempt from the payment of the tax. Plaintiffs brought suit alleging that under the uniformity clause of the Illinois Constitution, the privilege tax was facially unconstitutional. The trial court found that section 409 of the statute exempted domestic insurance companies without a rational relationship to any real and substantial difference between foreign and domestic insurance companies. Our supreme court held that the privilege tax on all foreign insurance companies did not bear a reasonable relationship to the object of the tax or to public policy. *Milwaukee Safeguard Insurance Co.*, 179 Ill. 2d at 102-03.

We find *Milwaukee* distinguishable from the instant case. Here, a difference clearly exists between those who are taxed (trucks using county roadways) and those who are not taxed (railroads and consumers purchasing fuel for home heating purposes). Moran, Serpe and Barnicle each testified that their trucks operate on county roadways. Serpe and Naughton stated that, except in rare situations, trains do not operate on county roadways. "It is well settled that a municipality is able to limit the class of persons taxed to those likely to benefit directly from a particular project while exempting those who will benefit only indirectly." *Geja's Café*, 153 Ill. 2d at 253. Here, the county

has chosen to tax all diesel fuel that has a low sulfur content. Defendants assert that the fact that trucks using such fuel utilize the county's roads is a rational basis for the tax. In response to plaintiff's complaint that boats, off-road vehicles and construction equipment do not use the county's roads yet must pay the tax, defendants point out that to exempt such uses from the tax would make enforcing the collection of the tax much more difficult. Another rational basis for imposing the tax only on low sulfur diesel fuel is provided by looking at where the fuel is actually expended. A rational basis for the exemptions for railroad diesel fuel and jet fuel may be that those conveyances use up the fuel someplace other than Cook County. Most railroad diesel engines and all jet planes actually expend the fuel they receive somewhere other than near the vicinity of where their fuel tanks are filled. To apply the tax to the owners of jets would require them to pay a tax on fuel they will expend many, perhaps thousands of, miles away. Thus, we conclude that county roadway usage is a reasonable distinction between those taxed and those who are not taxed.

■ Plaintiffs further assert that the Ordinance violates the uniformity clause because there is no explanation as to how the Ordinance's classifications bear any reasonable relationship to either the object of the legislation or to public policy. Plaintiffs argue that because the revenues from the diesel fuel tax are directed to the Cook County public safety fund and not a fund designed to maintain county roadways, the classification between those who are taxed and those who are not taxed is not reasonably related to the object of the legislation. Defendants respond that the Ordinance, was enacted as an amendment to the Gasoline Tax Ordinance, which has imposed a six cent per gallon tax on all sales of gasoline in Cook County since 1976. The record reveals that no tax receipts collected from the Gasoline Tax Ordinance are spent on maintaining or improving the County's roads or highways. The Ordinance thus places users of low sulfur diesel fuel in the same position that the users of gasoline have been in since 1976. Likewise, defendants argue, it is reasonable to exempt consumers who use home heating oil in their residences because the uniformity clause permits the legislature to enact laws that exempt taxation of food and other necessities. Ill. Const. 1970, art. IX, § 2.

In the instant case, we hold that the Ordinance is constitutional under the uniformity clause. It is of no moment where the gasoline tax proceeds are allocated. As the uniformity clause was designed to enforce "minimum standards of reasonableness and fairness as between groups of taxpayers" (*Geja's Café*, 153 Ill. 2d at 252), defendants have established that minimum; a reasonable relationship between the exemptions and the object of the legislation.

■ We decline to address plaintiff's contention that the Ordinance violates the equal protection clause and special legislation clause of the Illinois Constitution because "[i]f a tax is constitutional under the uniformity clause, it inherently fulfills the requirements of the equal protection clause." *Geja's Café*, 153 Ill. 2d at 247.

■ Finally, in their cross-appeal, defendants contend that the trial court abused its discretion in granting class certification to plaintiffs. Defendants argue that plaintiffs failed to establish that the requirements for certification of a class action were satisfied and that defendants were never afforded an opportunity to respond to plaintiffs' motion to certify the class.

Class certification is entirely within the province of the trial court and its determination will not be disturbed absent a clear abuse of discretion or the application of impermissible legal criteria. *Arca v. Colonial Bank & Trust Co.*, 265 Ill. App. 3d 498, 500, 637 N.E.2d 687 (1994). A plaintiff who seeks to maintain a class action must satisfy four statutory requirements: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of fact or law common to the class, which common questions predominate over any questions affecting only individual members; (3) the representative parties will fairly and adequately protect the interest of the class; and (4) the class action is an appropriate method for the fair and efficient adjudication of the controversy. 735 ILCS 5/2—801 (West 1996).

In the instant case, the trial court erred in granting plaintiffs' motion for class certification. The record reveals that plaintiffs' motion to certify the suit as a class action did not address the four statutory requirements necessary to maintain a class action. Furthermore, defendants were not given an opportunity to respond to plaintiffs' motion for class certification and there was no hearing on the motion. Thus, defendants were prejudiced by the trial court's decision to certify the class.

For the above reasons, the judgment of the circuit court of Cook County is affirmed in part, reversed in part and the cause is remanded for further proceedings consistent with this opinion.

Affirmed in part and reversed in part; cause remanded.

CAMPBELL, P.J., and ZWICK, J., concur.